
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 23 2018
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JEREMI RAINWATER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:17-CV-967-A |
| | § | |
| SERGEANT SC SIKES, BADGE 3285, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant Officer A. Smith ("Smith"), the motion of defendants Officer A. Aguirre ("Aguirre"), Officer C. Vistine ("Vistine"), Officer M. Montgomery ("Montgomery"), and Officer J. Nichols ("Nichols"), and the second motion of defendant Sgt. S.C. Sikes ("Sikes") to dismiss. The court, having considered the motions, the responses of plaintiff, Jeremi Rainwater, the replies, the record, and applicable authorities, finds that the motions should be denied.

### I.

### Plaintiff's Claims

On December 5, 2017, plaintiff filed his original complaint in this action. Doc.[1] 1. On February 22, 2018, having first obtained leave of court, plaintiff filed his amended complaint. Doc. 33.

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

Plaintiff alleges: Around 10:00 p.m. on December 19, 2015, he was at home in bed with his dogs when the dogs started disturbing him and barking. Doc. 33, ¶¶ 15-16. Plaintiff did not hear anyone knock or ring his bell, but the dogs would not stop barking. Id., ¶ 17. Plaintiff got up, grabbed his pistol for security, and went to his front door. He opened the door but did not see or hear anything. It was a dark night and the moon had not yet risen. Id., ¶ 18. Plaintiff went out onto his porch to see if he could figure out what was causing the dogs to be so disturbed. He carried his pistol by his right side with the muzzle pointed at the ground. Id., ¶ 19-20. Unbeknownst to plaintiff, police officers were forming a perimeter around his house and making sure plaintiff could not see them. They were investigating criminal mischief damages to an unoccupied vehicle in another location, not a crime involving harm or threatened harm to any person. Id., ¶ 21. The officers did not park their cars on the street or under any streetlight, so that plaintiff would not be aware of their presence. Aguirre and Nichols set up in the dark at a house one or two houses away; Smith and Sikes set up in a dark area outside the garage of a house one house away from plaintiff's house. People were in the garage of that house and Sikes went in to talk to them. Montgomery and Vistine were about 150-200 yards away and never came down the street

until plaintiff had been shot. Id., ¶ 22. Aguirre and Nichols were on the opposite side of plaintiff's house from Smith. Id., ¶ 43. Smith, wearing all black, was standing in the dark by a second house away from plaintiff's property with a rifle with a scope pointed at plaintiff. Neither Smith nor any other officer notified plaintiff via any means that they were present. Plaintiff never saw or heard anything. He turned his back to Smith and started to go back inside his home. Id., ¶ 24. Plaintiff felt a thud in his back and heard what sounded like a gunshot. It was from the rifle fired by Smith. Almost immediately, plaintiff fell to the porch face down. He was not even aware at the time that he had been shot a second time. Id., ¶ 25. Both shots hit plaintiff within one inch of the middle of his back. Id., ¶ 33. Plaintiff first knew of the presence of the police when they came to handcuff him after he had been shot. Id., ¶ 27. The bullets caused several broken ribs, a fractured pelvis, and splintered right arm in two places. Id., ¶ 28.

Further: Plaintiff was charged with criminal mischief for the damage to the vehicle that police came to his house to investigate. Each defendant officer filed a separate criminal charge of aggravated assault of a public servant against plaintiff. Id., ¶ 35. The charges were all based on the same deliberately fabricated evidence that Smith shot plaintiff when

3

plaintiff pointed his weapon at Smith. Id., ¶ 37. As a result of the aggravated assault charges, plaintiff's bail was set at $185,000, instead of the $5,000 that the criminal mischief charge warranted. Plaintiff was kept in jail until approximately March 7, 2016, when the grand jury no billed all of the aggravated assault charges and plaintiff's bail was reduced to $5,000, which he quickly posted. Id., ¶¶ 45, 46.

II.

Grounds of the Motions

Each movant alleges that plaintiff has failed to state a claim against him upon which relief can be granted and that he is entitled to qualified immunity.

III.

Applicable Legal Standards

A. Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need

not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

As the Fifth Circuit has explained: "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." Anderson v. U.S. Dep't of Housing & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008). In sum, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." Id. at 528-29. Further, the complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8(a). See Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999); see also Searcy v. Knight (In re Am. Int'l Refinery), 402 B.R. 728, 738 (Bankr. W.D. La. 2008).

In considering a motion to dismiss for failure to state a claim, the court may consider documents attached to the motion if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003). The court may also refer to matters of public record. Davis v. Bayless, 70 F.3d 367, 372 n.3 (5th Cir. 1995); Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). This includes taking notice of pending judicial proceedings.

Patterson v. Mobil Oil Corp., 335 F.3d 476, 481 n.1 (5th Cir. 2003). And, it includes taking notice of governmental websites. Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 457 (5th Cir. 2005); Coleman v. Dretke, 409 F.3d 665, 667 (5th Cir. 2005).

B.  Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S.

7

at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 136 S. Ct. 305, 308 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer

8

to lose his qualified immunity defense. In <u>Hunter</u>, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." <u>Malley</u>, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.
> . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. <u>Kovacic v. Villarreal</u>, 628 F.3d 209, 211 (5th Cir. 2010); <u>Foster v. City of Lake Jackson</u>, 28 F.3d 425, 428 (5th Cir. 1994). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. <u>White v. Pauly</u>, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. <u>Id.</u> at 552. Thus, the failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. <u>Id.</u>; <u>Surratt v McClarin</u>, 851 F.3d 389, 392 (5th Cir. 2017).

C.  Excessive Force

The elements of an excessive force claims are (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007). A use of deadly force is presumptively reasonable when an officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others. Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003). The reasonableness is to be determined from the perspective of the officer on the scene and not with "the 20-20 vision of hindsight." Id. at 625 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Further, that the officer himself may have created the situation does not change the analysis. In other words, that the officer could have handled the situation better does not affect his entitlement to qualified immunity. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985). See also City & Cty. Of San Francisco v. Sheehan, 135 S. Ct. 1765, 1777 (2015)(failure to follow training does not itself negate entitlement to qualified immunity).

IV.

Analysis

A. Officer Smith

Plaintiff's only claim against Officer Smith is based on the alleged use of excessive force. Doc. 33 at 13-14. The court thus considers whether plaintiff's allegations, if true, establish a constitutional violation. And, if so, the court considers whether Smith's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. Hope v. Pelzer, 536 U.S. 730, 736, 739 (2002).

In determining whether the use of deadly force is reasonable, the court considers the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Hogan v. Cunningham, 722 F.3d 725, 734 (5th Cir. 2013). Whether the force used is excessive or unreasonable depends on the facts and circumstances of each case. Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009).

In this case, plaintiff has pleaded that defendants were investigating criminal mischief that occurred earlier in the evening when an unoccupied vehicle in a parking lot at a

different location was damaged.² Officers were not investigating a crime involving any physical harm or threat to any person. Had defendants run a background check on plaintiff, at worst they would have discovered some traffic tickets and a public intoxication conviction. Plaintiff did not know that defendants were present outside his home. His dogs would not stop barking, so he took a pistol with him onto his porch to investigate. He kept the pistol by his right side with the muzzle pointed down. He was not committing any crime or threatening anyone. Defendants never notified plaintiff of their presence. As plaintiff turned to go back inside his house, Smith shot him in the back.

As plaintiff notes, the only thing that could possibly be perceived as a threat in this case was his carrying of a pistol on his front porch. But merely having a gun in one's hand does not per se equate to dangerousness or a threat. Graves v. Zachary, 277 F. App'x 344, 348 (5th Cir. 2008). Of course, the officer does not have to wait until the suspect shoots to confirm that a serious threat of harm exists. Ramirez v. Knoulton, 542 F.3d 124, 130 (5th Cir. 2008). Nevertheless, the officer must have probable cause to believe that in that moment in time when deadly force is used the suspect posed a threat of serious

---

²The indictment and plea agreement of which the court takes judicial notice reflect that plaintiff shot the vehicle with a firearm. Doc. 35.

physical harm, either to the officer or to others. Id. The question is one of objective reasonableness of the officer's conduct. Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009).

The parties do not dispute plaintiff's constitutional right under the Fourth Amendment to be free from the unreasonable use of excessive force. And, the facts alleged show that plaintiff posed no threat to any person at the time he was shot. Rather, plaintiff was turning to go back inside his house. He was not aware of the location of the officers, much less their presence. A reasonable officer would have known that shooting plaintiff in the back under those circumstances would not have been justified. See, e.g., Tennessee v. Garner, 471 U.S. 1 (1985); Mason v. Lafayette, 806 F.3d 268 (5th Cir. 2009); Cooper v. Sheehan, 735 F.3d 153 (4th Cir. 2013); Graves, 277 F. App'x 344; Bennett v. Murphy, 120 F. App'x 914 (3d Cir. 2005); Baker v. Putnal, 75 F.3d 190 (5th Cir. 1996); Baulch v. Johns, 70 F.3d 813 (5th Cir. 1995). The evidence may well show that the facts as pleaded by plaintiff are not true, but, at this stage, the court cannot conclude that Smith's use of deadly force was reasonable.[3]

---

[3] In other words, the issue of qualified immunity should be presented by motion for summary judgment in a case like this one.

13

B.  Other Officers

Plaintiff alleges that the officers other than Smith violated his substantive due process rights by filing false charges against him. Each of them filed a criminal charge of aggravated assault of a public servant, which he says is defined as follows:

> A person intentionally or knowingly threatens a public servant with imminent bodily injury and the accused knows the threatened person is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant.

Doc. 33 at ¶ 36. Plaintiff says he never knew the officers were present or threatened any of them. Id. at ¶ 39. And, because of the officers' physical locations, plaintiff could not have assaulted any of them[4] even if he did point his weapon at Smith. Id. at ¶¶ 41-43. As a result of these charges being filed against him, plaintiff's bail was set at $185,000 instead of $5,000, and he remained in jail because he could not pay $185,000. Id. ¶ 45. Once the aggravated assault charges were dropped, plaintiff quickly posted the $5,000 and was released. Id., ¶ 46. Only after the aggravated assault charges were dropped was a plea bargain on the criminal mischief charge made. Id., ¶ 47.

---

[4]Apparently, each officer claimed that plaintiff had intentionally and knowingly threatened him with imminent bodily injury. Copies of the charges have not been provided.

The officers (other than Smith) allege that plaintiff has not pleaded a Fourth Amendment claim against them because there was probable cause to arrest plaintiff on the criminal mischief charge. See Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Cole v. Carson, 802 F.3d 752, 764-65 (5th Cir. 2015), vacated on other grounds, 137 S. Ct. 497 (2016).[5] Further, they seem to argue that only a Fourth Amendment claim may be asserted when the basis for the claim is false arrest. See Manuel v. City of Joliet, 137 S. Ct. 911 (2017). Manuel is not so limiting. Jauch v. Choctaw Cty., 874 F.3d 425, 429 (5th Cir. 2017). In a case like this one, plaintiff properly asserts his claim under § 1983 based on a violation of his substantive due process rights. Jauch, 874 F.3d at 429-30; Rogers v. Johnson, 684 F. App'x 380, 390 (5th Cir. 2017). And, that is what plaintiff has alleged. Doc. 33 at 15-17.

As the Fifth Circuit has recognized, "[b]y 2010, no reasonable law enforcement officer would have thought it permissible to frame somebody for a crime he or she did not commit." Cole, 802 F.3d at 773 (citing Limone v. Condon, 372 F.3d 39, 50 (1st Cir. 2004)). The allegation here is that each of the officers (other than Smith) did just that--frame plaintiff for a

---

[5]The judgment in Cole was vacated so that the Fifth Circuit could consider whether qualified immunity applied to the excessive force claim in light of the Supreme Court's ruling in Mullenix v. Luna, 136 S. Ct. 305 (2015). 137 S. Ct. 497.

15

crime he did not commit. Based on the facts as pleaded, those officers are not entitled to qualified immunity.[6]

C. Other Grounds

Sikes argues that plaintiff has failed to state a conspiracy claim against him. Doc. 40 at 12-13. The court does not interpret the amended complaint to allege such a claim apart from plaintiff's due process claim. Doc. 33 at 15-17.

Sikes also asserts that plaintiff is not entitled to punitive damages, but the argument is based on the contention that plaintiff has not stated a claim upon which he could recover actual damages. Doc. 40 at 13-14. As discussed, plaintiff has stated such a claim.

V.

Order

The court ORDERS that the motions to dismiss be, and are hereby, denied.

SIGNED April 23, 2018.

_____
JOHN McBRYDE
United States District Judge

---

[6] Again, the facts pleaded may not be the true facts. The qualified immunity of these officers may be determined by motion for summary judgment.